## In Equity.

### JOHN A. ERSKINE et als.

*vs.*

### WISCASSET AND QUEBEC RAILROAD COMPANY et als.

### Lincoln.    Opinion February 8, 1909.

*Railroad Location.   Width of Location.   More than Four Rods may be Taken, When.
Bridges over Highways.   Railroad Commissioners may Require Railroad to
Build Same.   Railroad Estopped to Deny Location, When.   Excava-
tion Widened by "Natural Elements" Does not Widen Location.
Statute, 1889, chapter 282, section 2.   Revised Statutes, 1883,
chapter 18, section 27; chapter 51, sections 6, 14, 15.*

In 1894 the Wiscasset & Quebec Railroad Company filed, in attempted com-
pliance with statutory requirement, with the clerk of the county com-
missioners of Lincoln County, a "location" of its proposed railroad through
the town of Alna.   The statute permitted a railroad company to take land
for its location not "to exceed four rods in width, unless necessary for
excavation, embankment or materials," and required that the "location"
filed with the commissioners should show the boundaries of the land taken.
The "location" filed described only a single line, and the width of the land
taken was not given.   Thereafter, upon application by the company, the
railroad commissioners, acting under statute authority, and apparently
assuming the "location" filed to be legal and effective, authorized the com-
pany to excavate through a certain highway in Alna to such depth as
might be necessary to grade its railroad, and required it to construct a
bridge over the railroad track across the excavation "within the location
of said railroad."   Later the company excavated through the highway to
a depth of about thirty-three feet, and about one hundred and twenty feet
in width at the surface of the ground.   In 1898, on a bill in equity brought
by the selectmen of Alna against the company, it was ordered to construct
a bridge "in accordance with the adjudication and report of the railroad
commissioners."   No bridge has ever been constructed.   In 1897, after the
bill in equity had been brought, but before the decree of the court, the
company filed a new "location," as it had a statutory right to do, in which
the land taken was described as a strip four rods wide, of which the line
described in the prior location was the center.   Since the excavation was
originally made, it has become widened somewhat by the action of the
natural elements.   The Wiscasset, Waterville & Farmington Railway Com-
pany is the present owner of the railroad, having succeeded to the title and
to the duties of the Wiscasset & Quebec Railroad Company.

VOL. CV 8

In a bill in equity, brought by the present selectmen of Alna, praying for a mandatory injunction to require the present owner of the railroad to perform the judgment of the railroad commissioners, and the former decree of the court, *Held:*

1.   That the railroad company had a lawful right by filing a sufficient "location," to take a strip of land at the point in controversy, not only four rods in width, but as much wider as was necessary for the excavation authorized.

2.   That the Wiscasset & Quebec Railroad Company, after securing the adjudication of the railroad commissioners, after the actual taking of the land under it, and after being heard in its defense on the original bill in equity, and after judgment thereon, is estopped, in this proceeding, to deny that it had a legal location, as wide as it had a lawful right to acquire, and which it actually did take, although in fact the "location" filed was ineffective, because it failed to give the boundaries of the land taken.

3.   That the present owner, having succeeded to the title and the duties of the Wiscasset & Quebec Railroad Company, is in like manner estopped.

4.   That the obligation of a railroad company, when it builds its road across a public way, to bear, or share in, the expenses of putting the way into a condition for travel is, in this State, a statutory one, of which the railroad commissioners have jurisdiction; and that they may lawfully require the company to erect at its own expense a bridge over the excavation made by it, so far as the same is within the railroad location.

5.   That the rights of the town of Alna had become fixed prior to the new location in 1907, and that the company could not, so far as the town is concerned, limit the town's rights by a new location narrower than the land actually taken.

6.   That the widening of the excavation by the action of the natural elements has not widened the location, nor has it added to the responsibility of the railroad company, and that the present owner is obliged to construct a bridge only for the width of the original excavation.

In equity.    On report.    Decree according to opinion.

Bill in equity for a mandatory injunction, brought by the selectmen of Alna against the Wiscasset & Quebec Railroad Company and its several successors, including the Wiscasset, Waterville & Farmington Railway Company which now owns and operates the railroad formerly constructed by the Wiscasset & Quebec Railroad Company, seeking to enforce the performance of a decree made by the Supreme Judicial Court sitting in Lincoln county, in October, 1898, on a bill filed April 23, 1895, by the selectmen of Alna, wherein the Wiscasset & Quebec Railroad Company was ordered to erect or cause to be erected within a certain time, a suitable and

substantial highway bridge over and across its railroad track and over and across the excavation made by it across a certain highway in said Alna. The Wiscasset, Waterville & Farmington Railway filed an answer to the bill. The other defendants did not answer. When the cause came on for hearing, several agreements and admissions were made and the case was then reported to the Law Court for determination.

The case is stated in the opinion.

*Wm. N. Titus, O. D. Castner, and Charles L. Macurda,* for plaintiffs.

*Norman L. Bassett,* for Wiscasset, Waterville & Farmington Railway Company.

SITTING : EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

SAVAGE, J. This case comes up on report. It is a bill for a mandatory injunction, brought by the selectmen of Alna against the Wiscasset & Quebec R. R. Co. and its several successors, including the Wiscasset, Waterville & Farmington Railway Co. which now owns and operates the railroad formerly constructed by the Wiscasset & Quebec R. R. Co. The plaintiffs seek to enforce the performance of a decree made by the Supreme Judicial Court sitting in Lincoln county, in October, 1898, on a bill filed Apr. 23, 1895, by the selectmen of Alna, wherein the Wiscasset & Quebec R. R. Co. was ordered "to erect or cause to be erected by the first day of September 1898 (?), a suitable and substantial highway bridge over and across its railroad track and over and across the excavation made by it across the highway in Alna, at the place named in the complainant's application, said bridge to be located in accordance with the adjudication and report of the railroad commissioners heretofore made." The adjudication of the railroad commissioners referred to was made June 12, 1894, and is in these words :— "The railroad company (The Wiscasset & Quebec R. R. Co.) is hereby authorized and empowered to excavate through and under said way at point of crossing, to such depth as may be necessary to grade said railroad,

and said corporation shall thereupon erect and maintain a suitable and substantial highway bridge over said railroad track; said structure shall be supported on suitable stone abutments, or upon substantial wooden trestles. Said bridge shall be at such height above the railroad track as will give a space or head room of at least twenty feet between the track and the lower part of the stringers of said bridge. Said bridge and top of the approaches thereto shall not be less than twenty feet in width, and said bridge and the approaches thereto, within the location of said railroad, shall be constructed and maintained by said railroad company in such manner that the same shall be safe and convenient for travelers on said way with horses, teams and carriages."

Under this judgment of the railroad commissioners, the railroad company, in June, 1894, excavated through the said highway, at the point of crossing, to the depth of about thirty-three feet, and about one hundred and twenty feet in width at the surface of the ground, and constructed its railroad track across the way, at the bottom of the excavation, and there operated its railroad.

The obligation of a railroad company when it builds its road across a public way, to bear, or share in, the expenses of putting the way into a condition for travel is, in this State, a statutory one, of which the railroad commissioners have jurisdiction. They are to determine the manner and conditions of crossing. Laws of 1889, c. 282, s. 2; R. S., 1883, c. 18, s. 27. And it is not questioned that the railroad commissioners might lawfully require the railroad company to erect at its own expense a bridge over an excavation made by it and construct the approaches to it, so far as the same were within the railroad location. Laws of 1889, chap. 282, sect. 2; R. S., 1883, chap. 18, sect. 27.

It is conceded that the decree of the court made in 1898 has not been performed, and that no bridge of any kind or length has ever been erected by anyone. No reason is offered why one should not be erected. In fact, the Wiscasset, Waterville & Farmington Railway Co., upon which rests the obligations of the original railroad company, in its answer says that it "is under the obligation to construct and maintain so much of said bridge and the

approaches thereto as are within the location of said railroad," but claims that it is not obliged to erect or maintain any part of a bridge or approaches outside the boundaries of its location. It claims that its location is only four rods wide. The company prays that its duty may be so determined and limited by the decree in this case. On the other hand, the plaintiffs contend that under the former decree of the court the railroad company is bound to build a bridge across the entire width of the excavation. Thus the only question which the court is called upon to determine is the length of the bridge and approaches which the company is bound to erect.

The decree of the court was that the bridge should be erected in accordance with the adjudication of the railroad commissioners, and that adjudication was that the bridge and the approaches thereto, "within the location of said railroad" should be constructed by the railroad company. The statute did not give the commissioners any jurisdiction to order the building of a bridge, or a part of one, outside the railroad location, and they did not assume to do so. We think the statute giving the railroad commissioners jurisdiction in this class of cases contemplated that the excavation made in crossing a highway would all be within the railroad location, for another statute, R. S., 1883, ch. 51, sect. 14, empowered a railroad to take, without regard to width, all the land for its location which excavations made necessary, though the width of a location was in general limited to four rods.

The statute also contemplated, and so expressly declared, that the manner and conditions of crossing should be determined before the company entered upon the construction of the railroad. Public Laws of 1889, chap. 282, sect. 2. And since it might become proper in the course of actual construction to change the contemplated grade of the road, and for that purpose to deepen the excavation, and also its width, it could not be certainly known at the time of adjudication just how wide the excavation would be, and how much land it would become necessary to take. And thus it might become necessary to take more land, which it could do under section 14 of chapter 51 of the Revised Statutes of 1883. And even if, after the roadway had been built, it was found that the

land actually embraced by it had not been acquired by a previous taking, it might correct and perfect its location by a new taking under section 15. But it was to be presumed that a railroad company would exercise its rights in such instances and take land for locations wide enough for its necessities. If it exceeded its rights and excavated land which it had not legally taken, that fact did not extend the jurisdiction of the railroad commissioners, unless the statute method prescribed in section 15 was followed by the company. Other methods of prevention or remedy were open to injured parties.

We think the jurisdiction of the railroad commissioners extended to the full width of the railroad location as it then was, or as it might afterwards become by lawful taking, but no farther; and that their adjudication in 1894 must be so construed.

Nor did the court undertake, if, indeed, it had the power, to make its decree broader than the order of the railroad commissioners.

So that the question resolves itself to this:—How wide was the railroad location at the point of crossing, or how wide did it lawfully become? The defendant contends that it was never more than four rods wide. As already stated, the extreme width permitted by the statute was four rods, except when necessary to take more land by reason of excavations and enbankments. R. S., chap. 51, sect. 14. To answer the question we must first look to the records. By R. S., 1883, chap. 51, sect. 6, it was provided, as a preliminary and essential step towards the taking of land for a railroad location, that the company should "file with the clerk of the county commissioners of each county through which the road passes a plan of the location of the road, defining its courses, distances and boundaries." A like copy was to be filed with the railroad commissioners, who were authorized to approve the location, upon petition, after notice and hearing. In 1893 or 1894, prior to the adjudication by the railroad commissioners, the Wiscasset & Quebec R. R. Co. filed, as is alleged and admitted, with the county commissioners of Lincoln county, a "location" of its railroad from Wiscasset, through Alna to the county of Kennebec, which was, as we understand, in attempted compliance with the foregoing requirement of the statute. A copy.

of this location is in the record before us.   It gives only the description of a single line, beginning at a definite point in Wiscasset and running with definite courses and distances, through Alna, to the Kennebec county line.   It does not state whether this is the center or the side line of the location.   Nor does it state the width of the location.   It fails therefore to give, as the statute required, the "boundaries of the location."   Such a "location" was plainly imperfect and ineffective.   By it the company did not take any land, and had no statutory location.   The present defendant, however, does not seek to avoid its responsibility on this account.   It shows that in 1897, after the original bill was filed, but before the decree, a new location was filed with the county commissioners, under section 15, which set out that the original location failed to acquire land actually embraced in its roadway, and that that location was defective and uncertain.   The new location described a location four rods in width; the center line of which was, so far as the Alna crossing is concerned, the line described in the original location.   And the defendant contends that this proceeding corrected and perfected its location, and limited it at all places to a strip four rods wide, and further, as we understand the contention, that it related back and made it a four rod location as of the time of the attempted location; and further still, that, by relation back, the location referred to in the adjudication of the railroad commissioners must now be deemed to be of the width of the location, as corrected.

We may pass for a moment the effect of the later location.   Though the original location was defective and ineffective, yet, we think the Wiscasset & Quebec R. R. Co. cannot now be permitted to deny, in this proceeding, and as against these plaintiffs, that it had a location in Alna.   Nor can this defendant, its successor, deny it. After securing the adjudication of the railroad commissioners, after the actual taking of the land under it, and after being heard in its defense in the original bill in equity, and after judgment thereon, it is estopped to deny that it had a location of some width.   And so is this defendant.   It is also now estopped to deny the necessity of taking as much land as was taken.   But how wide was that location?   Was it two rods? or three rods? or four rods? or

more? It might have been either. We think the question is to be answered by the acts of the railroad company itself, by the width of the land it actually took and used. We think, disregarding now the new location in 1897, that it is estopped to deny that it had a location as wide as it had a lawful right to acquire and which it actually did take. By actually taking land in the limits within which it might lawfully condemn, it fixed, as to the interests represented by these plaintiffs, the limits of the location.

But the defendant contends that the corrected location should control the conclusion thus reached, and that the decree made after the location was corrected may be presumed to have been made upon the changed situation. The decree is silent as to this, and properly it could only have been made upon the allegations of the bill filed in 1895. However, without resting our decision upon this ground, we think that the rights of the town of Alna had become fixed prior to the new location in 1897, and that it did not lie in the power of the railroad company to modify or limit them, by a subsequent location, narrower than the land actually taken.

It follows that the bill must be sustained against the Wiscasset, Waterville & Farmington Railway Company. If that company shall not erect, or cause to be erected, within four months after the certificate of this decision is received, a suitable and substantial highway bridge, over and across its railroad track, and over and across the excavation made by the Wiscasset & Quebec R. R. Company, across the highway in Alna, at the place named in the original application, said bridge to be erected in accordance with the adjudication and report of the railroad commissioners, hereinbefore referred to, and to extend across the full width of the excavation as it was made by the company at the time of construction, or prior to the making of the former decree, then a decree therefor, with mandatory injunction, will be made by a single Justice. Costs will be awarded to the plaintiffs in any event.

To prevent any misunderstanding, we will add a word further. It appears that since 1898, the opening made by the excavation has been widened by the action of the natural elements. We do not think this has added to the defendant's responsibility. The location

for which the defendant is responsible is the one which its predecessor made. The breaking down or the caving in of a bank of a railroad cut does not widen the location. If the parties cannot agree upon the width of the excavation and location as made by the railroad company, a master will be appointed to ascertain and report the fact.

*Decree in accordance with the opinion.*